UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No.3:06CR64 (CFD) |
| | : | |
| DENNIS PARIS | : | July 10, 2008 |

GOVERNMENT'S
MEMORANDUM IN AID OF SENTENCING

**I.      Introduction**

On June 14, 2007 Dennis Paris was convicted by a jury on twenty-one counts of the Second Superseding Indictment, as follows: (a) one count of conspiracy to use an interstate facility to promote prostitution, in violation of 18 U.S.C. § 371; (b) two counts of sex trafficking of minors, in violation of 18 U.S.C. § 1591; (c) two counts of sex trafficking by force, fraud, or coercion, in violation of 18 U.S.C. § 1591; (d) thirteen counts of use of an interstate facility to promote prostitution (Travel Act), in violation of 18 U.S.C. § 1952 (a)(3); and (e) three counts of money laundering, in violation of 18 U.S.C. § 1956 (a)(1)(A)(I).

The Presentence Report concludes that the applicable sentencing guideline range is 360 months to life imprisonment. This suggested range reflects the serious, often irreparable damage done to the lives of girls and young woman who are duped or coerced into the degrading life to which defendant Paris subjected them. In light of the pain and suffering inflicted on these victims, and the defendant's extensive criminal history, it is submitted that a guideline sentence is appropriate and necessary in this case.

Sentencing is scheduled for July 24, 2008 at 10:00 a.m.

**II.     Applicable Law Governing Sentencing**

As this court is well aware, the Sentencing Guidelines are no longer mandatory, but rather represent one factor a district court must consider in imposing a reasonable sentence in accordance with Section 3553(a).  *See United States v. Booker*, 543 U.S. 220, 258 (2005); *see also United States v. Crosby*, 397 F.3d 103, 110-118 (2d Cir. 2005).  Section 3553(a) provides that the sentencing "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection," and then sets forth seven specific considerations:

>   (1)   the nature and circumstances of the offense and the history and characteristics of the defendant;
>   (2)   the need for the sentence imposed—
>         (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>         (B)   to afford adequate deterrence to criminal conduct;
>         (C)   to protect the public from further crimes of the defendant; and
>         (D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>   (3)   the kinds of sentences available;
>   (4)   the kinds of sentence and the sentencing range established [in the Sentencing Guidelines];
>   (5)   any pertinent policy statement [issued by the Sentencing Commission];
>   (6)   the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>   (7)   the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

In *United States v. Crosby*, 397 F.3d at 111-113, the Second Circuit explained that, in light of *Booker,* district courts should now engage in a three-step sentencing procedure.  First, the district court must determine the applicable Guidelines range, and in so doing, "the sentencing

judge will be entitled to find all of the facts that the Guidelines make relevant to the determination of a Guidelines sentence and all of the facts relevant to the determination of a non-Guidelines sentence." *Crosby*, 397 F.3d at 111-112; *see also United States v. Salazar*, 489 F.3d 555, 557 (2d Cir. 2007) (post-*Booker* district courts maintain a statutory obligation to consider the Guidelines). Second, the district court should consider whether a departure from that Guidelines range is appropriate. *Crosby*, 397 F.3d at 112. Third, the court must consider the Guidelines range, "along with all of the factors listed in section 3553(a)," and determine the sentence to be imposed. *Id.* at 112-13; *see also United States v. Salazar*, 489 F.3d at 557 (holding, "the discretion afforded district judges by *Booker* applies to their consideration of the Guidelines range as one of the § 3553(a) factors *after* that range has been calculated") (emphasis in original). The fact that the Sentencing Guidelines are no longer mandatory does not reduce them to "a body of casual advice, to be consulted or overlooked at the whim of a sentencing judge." *Crosby*, 397 F.3d at 113. A failure to consider the Guidelines range and to instead simply select a sentence without such consideration is error. *Id.* at 115; *see also United States v. Cuevas*, 496 F.3d 256, 265 (2d Cir. 2007) (explaining district courts have a duty "to consider the applicable Guidelines range, in addition to the other factors listed in 18 U.S.C. § 3553(a), in determining the appropriate sentence").

In *Gall v. United States*, 128 S.Ct. 586 (2007), the Supreme Court explained that "[b]ecause the Guidelines are now advisory, appellate review of sentencing decisions is limited to determining whether they are 'reasonable' [citation omitted] and an abuse of discretion standard applies. . . ." *Gall,* 128 S.Ct. at 590. The Court explained that a district judge "may not presume that the Guidelines range is reasonable but must make an individualized assessment

based on the facts of the case." *Id.* In so doing, the sentencing judge "must consider the extent of any departure from the Guidelines and must explain the appropriateness of any unusually lenient or harsh sentence with sufficient justifications." *Id.* Sentencing judges are no longer required to find "extraordinary" circumstances to justify a departure. *Id.*

The victims have all been notified of the sentencing date and it is the Government's understanding that none are planning to attend or address the Court.

### III.     Defendant's Criminal History

The defendant denies recollection of whether or not he was represented by counsel at various points during his criminal history. Based upon this representation, he claims that most of his prior convictions should therefore not be counted toward his criminal history category. This claim is without merit.

In *Parke v. Raley*, 506 U.S. 20 (1992), the Supreme Court held that the standard in similar cases is whether his plea was made "knowingly and voluntarily." Here, the issue is whether he knowingly waived his right to counsel *Id.* at 20. Moreover, Due Process requires the Government to prove the validity of the prior conviction by something less than clear and convincing evidence. *Id* at 21. Once the Government proves the existence of the conviction, it is the defendant's burden to show that there was a Due Process violation. Id. At 20.

Here, the Second Addendum to the Presentence Report includes the docket sheets of numerous prior convictions, the majority of which include a signed notation by the judge indicating that the defendant was advised of his rights. Therefore, it is now the defendant's burden to show not only that he was not represented by counsel, but that he was not advised of his rights to proceed absent such representation.

In an effort to efficiently and promptly resolve these issues, the Government has ordered transcripts, on an expedited basis, and will provide copies to the Court, defendant and probation officer as soon as it is received.

### IV. Defendant's Post-*Santos* Challenge to Money Laundering Counts

The defendant has filed a "Renewed Motion For Judgment of Acquittal or New Trial" as to the money laundering counts based on the recent Supreme Court decision in *United States v. Santos*, 128 S. Ct. 2020 (2008). In this case the Supreme Court discussed the meaning of "proceeds," as used in the federal money laundering statute, 18 U.S.C. § 1956(a)(1). In a 4-1-4 decision, the Court held that when the predicate specified unlawful activity is an illegal *gambling* business, "proceeds" means "profits," not "gross receipts." The Government's response to this motion is fully briefed in its response filed on July 7, 2008.

For purposes of sentencing it should be emphasized that the money laundering counts add *no* points to the total offense level. Therefore, the resolution of this issue will have no impact on the recommended sentencing guideline range set forth in the Presentence Report. *See* Paris PSR, paragraph 114.

### V. Obstruction Enhancement

The defendant also objects to the two level enhancement for obstruction of justice. This enhancement is applicable if the district court finds that the defendant committed perjury while testifying at trial. *See United States v. Dunnigan*, 507 U.S. 87, 94 (1993) (holding that perjury required for enhancement under U.S.S.G. §3C1.1 based upon defendant's false testimony must relate to "material matter with the willful intent to provide false testimony"); *United States v. Onumonu,* 999 F.2d 43, 45- 46 (2d Cir. 1993) ("A district court may enhance a defendant's

sentence for obstruction of justice if the defendant commits perjury."). Prior to applying the obstruction enhancement based on perjury, the district court must find "by a preponderance of the evidence that the defendant 1) willfully 2) and materially 3) committed perjury, which is (a) the intentional (b) giving of false testimony as to a material matter." *United States v. Agudelo,* 414 F.3d 345, 349 (2d Cir. 2005) (*quoting United States v. Zagari,* 111 F.3d 307 (2d Cir. 1997)); see also *United States v. Carty*, 264 F.3d 191, 194 (2d Cir. 2001) (holding that facts supporting obstruction enhancement need only be proven by preponderance of evidence).

As this Court knows, the defendant took the witness stand and gave extensive testimony under oath. Although he had admitted to several of the members of the prosecution team during his proffers that he knowingly operated a prostitution business, at trial he testified he never told the Government that and claimed the agent had fabricated it in her report. Furthermore, he denied knowing that the minor victims were minors. However, one victim, Eileen K. testified that she told Paris she was 16, while the second minor, Marianne C, testified that she was only 14 years old when he lured to a motel room promising her a job (she believed would be a maid), and instead had sex with her to illustrate the kind of work he wanted her to do for him.

The defendant testified that he was not running a prostitution business, but instead was operating a legitimate "escort service" in which he set up dates. The defendant testified that whether the girl and the man had sexual relations was not part of his business, and was of no concern to him. This testimony, however, was contrary to all other witnesses, including the victims,' testimony and *was rejected by the jury*. The evidence showed, and the jury credited the testimony, that Paris knew and required the victims to have sex. Testimony showed that he provided condoms and drugs to the girls. Furthermore, in a proffer interview with the

- 6 -

Government, he admitted that he was running a prostitution operation (although he tried to recant at trial). Therefore, his claim of lack of knowledge was, and is, inconsistent with all the credible facts of this case.

## VI.     *Apprendi* Arguments

A substantial part of the defendant's arguments contained in the Presentence Report are predicated on his claim that every fact considered by a court "to increase a sentence" must be proved to a jury beyond a reasonable doubt.  He relies on the Supreme Court decision in *Apprendi v. New Jersey,* 530 U.S. 466 (2000), in which the Court interpreted the Sixth Amendment right to a trial by jury (as incorporated by the Fourteenth Amendment's Due Process Clause) to hold that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime *beyond the prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490 (emphasis added).  In other words, as the Supreme Court reaffirmed in *United States v. Booker*, 543 U.S. 220 (2005), "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Id.* at 244.  However, the *Apprendi* Court held that sentencing judges do have discretion in considering relevant facts to determine a sentence "*within statutory limits* in the individual case." *Apprendi*, 530 U.S. at 481.  This policy is to protect defendants from being exposed to penalties that exceed the statutory limits of their crimes of conviction by judicial determination of facts not found by a jury.  *Id.* at 483–85.

When application of a cross-referencing provision in the Sentencing Guidelines results in a sentence that does not exceed the statutory maximum, *Apprendi* is inapplicable.  *United States*

*v. Evans*, 285 F.3d 664, 671–72 (8th Cir. 2002) (affirming district court's cross-reference from § 2G1.1 to § 2A3.1 and subsequent 135-month upward departure from high end of defendant's guidelines range); *see also United States v. Monroe*, 259 F.3d 1220, 1226 (10th Cir. 2001) (holding "use of the cross reference and application of [§ 2A3.1]" in a kidnaping case did not violate *Apprendi* when the use of the criminal sexual abuse guideline did not increase the statutory maximum); *United States v. Clinton*, 256 F.3d 311, 314 (5th Cir. 2001) (rejecting the argument that *Apprendi* applies to sentencing factors that do not cause the sentence to exceed the statutory maximum); *United States v. Harris*, 238 F.3d 777, 779 (6th Cir. 2001) (per curiam) (holding that the use of cross reference in § 2B3.1 of the guidelines did not violate *Apprendi* when the sentence imposed did not exceed the statutory maximum).

Recently, the Eleventh Circuit affirmed the district court's application of a cross-reference to § 2A3.1, where the defendant had pled guilty to sex trafficking of children charges but had not been convicted of criminal sexual abuse. *United States v. Madison*, 477 F.3d 1312, 1313–14 (11th Cir. 2007) (per curiam), *cert. denied*, 127 S. Ct. 2925 (2007). The Second Circuit has held that district courts may "sentence defendants based on facts not alleged in the indictment, *as long as those facts do not increase the penalty beyond the prescribed statutory maximum sentence or trigger a mandatory minimum sentence that simultaneously raises a corresponding maximum*, without violating the Fifth or the Sixth Amendment." *United States v. Sheikh*, 433 F.3d 905, 905–06 (2d Cir. 2006) (emphasis added). Since the maximum penalty the defendant faces for sex trafficking by force, fraud or coercion is life imprisonment, none of the facts argued in defense counsel's letter as enhancing his penalty result in a penalty beyond the statutory maximum.

To credit the defendant's view of *Apprendi* would mean that every factor considered by the Court as "relevant" conduct would have to be specifically found by a jury beyond a reasonable doubt. However, this Circuit has clearly and consistently held that a preponderance of the evidence standard is sufficient for a sentencing judge to use when determining facts relevant to sentencing:

> The Supreme Court has observed that the 'preponderance of the evidence' is the generally applicable standard for a sentencing judge to employ when deciding the weight and effect to accord relevant, uncharged conduct at sentencing. Likewise, the Sentencing Commission has stated that the "use of a preponderance of the evidence standard is appropriate to meet due process requirements and policy concerns in resolving disputes regarding application of the guidelines to the facts of a case." U.S.S.G. § 6A1.3, comment.

*United States v. Cordoba-Murgas*, 233 F.3d 704, 708 (2d Cir. 2000) (internal cites omitted); *see also United States v. Ruggiero*, 100 F.3d 284, 290 (2d Cir.1996); *United States v. Gigante*, 94 F.3d 53, 56 (2d Cir.1996) (finding that the preponderance standard "continues to govern"); *United States v. Concepcion,* 983 F.2d 369, 390 (2d Cir.1992).

Even after *Apprendi* and *Booker*, the preponderance standard still applies in this Circuit. *See, e.g.*, *United States v. Cuevas*, 496 F.3d 256, 265 (2d Cir. 2007) (finding that sentencing judges can rely on their own factual findings in determining sentences); *United States v. Salazar*, 489 F.3d 555, 557 (2d Cir. 2007) (per curiam); *United States v. Vaughn*, 430 F.3d 518, 525 (2d Cir. 2005). Thus, the defendant's argument is without merit.

**VII. Organizer/Leader Objection**

U.S.S.G. Section 3B1.1(a) provides for a four-level increase in a defendant's offense level if the Court finds he "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." Despite the defendant's objection to the contrary, he was clearly an organizer and leader of a prostitution ring which always involved at

least five participants, and from time-to-time, many more.  In addition to Ronald Martinez and his assistants, Kazimeirz Sulewski, Christopher Fanning and Steven Tanuis, Paris employed his own drivers, including Warren Williams, Jerome Hargrove, and Antonio Dove.  Furthermore, the ring also extended to  Brian Forbes and Shanaya Hicks.

**VIII**.   **Vulnerable Victims**

U.S.S.G. Section 3A1.1(a) provides that "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim," a two-level increase applies to the defendant's offense level.   In this case the defendant preyed on young run-a-way girls from broken homes who were struggling to stay afloat.  There is no question that in the case of Melissa P. and Jennifer D. that their struggles had led them into the world of illegal drugs.  However, rather than negate their status as vulnerable as the defendant suggests in his letter to the probation officer, their drug addictions made them more vulnerable to Paris' manipulation for his own economic gain.  As the evidence at trial proved, Paris exploited their addictions and forced their compliance with his orders by withholding drugs and rewarding them with drugs.

**IX.  Commercial Sex and Force Fraud and Coercion**

The defendant argues that under § 2G1.1, *both* commercial sex and force, fraud or coercion are necessary and concludes the enhancement is, therefore, not applicable.  In fact, the evidence at trial clearly supports this enhancement.  There is no question this case not only involved commercial sex, but that this was the motive for the defendant's criminal conduct.  His primary, if not exclusive, objective was to make money by selling the girls' sexual acts in exchange for money, which he then used for his own use and enrichment.   Although Paris and

his cohorts sometimes took advantage of the girls to satisfy their own sexual desires, his business was about making money by charging men to have sex with the girls he controlled.

With regard to Jennifer D. and Melissa P., the evidence at trial established the use of force (striking Jennifer D. in the face and striking and raping Melissa P.), fraud (promising them money but not giving it to them), and coercion (legal coercion in the case of Melissa P threatening to notify authorities on her outstanding arrest warrant and withholding drugs to coerce both into obedience).

With regard to both minors, although he did not use force or coercion, he did use fraud to induce them to work for him. With regard to Eileen K. in Count Two, he promised to pay her, but did not always do so. With regard to Marianne C., as discussed above he tricked her into working for him by leading her to think she would be doing maid service in the motel, and then inducing her to engage in prostitution. Therefore, both fraud and commercial sex were involved and the enhancement applies.

Accordingly, both commercial sex and force, fraud and/or coercion were established as to all victims.

X.      **Guideline Sentence Reasonable and Appropriate**

This case is one in which a guideline sentence is reasonable and appropriate. The defendant callously exploited young out of pure greed. He has never shown even a modicum of remorse, nor has he in any way acknowledged the wrongfulness of his conduct. Instead, with bravado, he has justified the harm he inflicted and pain he caused as a "legitimate" business. Given this failure to accept responsibility for his actions and his rapid return to this illegal conduct upon his release from State jail sentences, it is very likely he would return to this illegal

way of life and again cause substantial harm to other girls and young woman. This is clearly a case where society need to be protected from the defendant. *See* 18 U.S.C. § 3553(a)(1)©.

The defendant preyed on minor girls and young woman in their late teens. His victims typically came from broken homes and were desperate for food and shelter. Treating them like chattels, he forced them to work long days, having sexual relations with numerous men each day, and, as the testimony of Melissa P. showed, ignored their pain and injury when they were abused by males. In the case of the minor girls, he duped them into prostitution by promising sums of money minors rarely see. In the case of Marianne C., he lured her by making her believe she would be cleaning rooms in a motel as a maid, and them having sexual relations with the 16 year-old within a short time after tricking her into the motel room. In short, he had no qualms about inducing minor girls to let men have sex with them, so that he could enrich himself by the sale of their young bodies.

In the case of Melissa P. and Jennifer D., he manipulated them with illegal drugs, providing them and withholding them to coerce their obedience to his orders. If they resisted too strongly, physical force was used. In the case of Melissa P., this intensified to the level of fear and threatened and perceived death.

There can be no question that this abusive treatment has left each with scars they will bear for life. The need to punish the defendant for this inhumane treatment of others, and to protect society his substantial likelihood of future crimes, makes a guideline sentence necessary in this case.

**XI.    Conclusion**

For the reasons set forth above, the Government submits that a sentence within the applicable Guidelines range is reasonable, appropriate and necessary in this case.

>Respectfully submitted,
>
>NORA R. DANNEHY
>ACTING UNITED STATES ATTORNEY
>
>/s/
>
>JAMES G. GENCO
>ASSISTANT UNITED STATES ATTORNEY
>FEDERAL BAR NO. CT00360
>450 MAIN STREET, ROOM 328
>HARTFORD, CT  06103
>(860) 760-7949
>Federal Bar No. ct00360
>
>
>ANDREW J. KLINE
>SPECIAL LITIGATION COUNSEL
>U.S. DEPARTMENT OF JUSTICE
>950 PENNSYLVANIA AVENUE N.W.
>WASHINGTON, D.C.
>TEL. (202) 307-2897
>Federal Bar No. DC441845

## **CERTIFICATION**

I hereby certify that the foregoing was mailed this 10th day of July, 2008, to:

Jeremiah Donovan, Esq.
P.O. Box 554
Old Saybrook, CT 06475

/s/

James G. Genco
Assistant U.S. Attorney

- 14 -